ACCEPTED
15-24-00120-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
1/21/2025 3:07 PM
CHRISTOPHER A. PRINE
CLERK

No. 15-24-00120-CV

# In the Court of Appeals
# for the Fifteenth Judicial District
# Austin, Texas

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
1/21/2025 3:07:36 PM
CHRISTOPHER A. PRINE
Clerk

THE STATE OF TEXAS,

*Appellant*,

*v.*

HARRIS COUNTY, TEXAS; HARRIS COUNTY COMMISSIONERS COURT; LINA HIDALGO, IN HER OFFICIAL CAPACITY AS HARRIS COUNTY JUDGE; RODNEY ELLIS, IN HIS OFFICIAL CAPACITY AS COMMISSIONER OF HARRIS COUNTY PRECINCT 1; ADRIAN GARCIA, IN HIS OFFICIAL CAPACITY AS COMMISSIONER OF HARRIS COUNTY PRECINCT 2; TOM RAMSEY, IN HIS OFFICIAL CAPACITY AS COMMISSIONER OF HARRIS COUNTY PRECINCT 3; LESLEY BRIONES, IN HER OFFICIAL CAPACITY AS COMMISSIONER OF HARRIS COUNTY PRECINCT 4; HARRIS COUNTY PUBLIC HEALTH; AND LEAH BARTON, IN HER OFFICIAL CAPACITY AS EXECUTIVE DIRECTOR OF HARRIS COUNTY PUBLIC HEALTH,

*Appellees.*

On Appeal from the
165th Judicial District Court, Harris County

## RESPONSE TO APPELLEES' MOTION TO VACATE

TO THE HONORABLE FIFTEENTH COURT OF APPEALS:

Despite being told twice to refrain from handing out cash to a tiny fraction of its residents—once by the Texas Supreme Court and now by this Court—Harris County continues its effort to implement its poorly designed version of a univer-

sal-basic-income program, the Harris County Community Prosperity Program (Program). As the Supreme Court previously explained, "[t]emporarily preventing expenditure of these funds while the State's appeal proceeds ensures public funds are not irrevocably spent in violation of the Texas Constitution." *In re State,* No. 24-0325, 2024 WL 2983176, at *5 (Tex., June 14, 2024). Moreover, "[e]ach court of appeals or a justice of a court of appeals may issue a writ of mandamus and *all* other writs necessary to enforce the jurisdiction of the court." Tex. Gov't Code § 22.221(a) (emphasis added). Relying upon this established authority, the Court properly entered a temporary order to protect its jurisdiction and ability to afford full and effective relief. The Court acted well within the bounds of its authority, so it should deny Harris County's motion to vacate the order.

## ARGUMENT

### I. Harris County Is Inconsistent.

The history of the Uplift Harris litigation and this litigation counsels against granting the County's motion to vacate. During Uplift Harris, the County insisted that it had to commit the funding to a particular purpose by the end of 2024. That date formed at least part of the basis for the speed at which the parties have briefed both that case and this one. Yet now, after it has presumably committed the funding, the County asks the Court not to prevent it from making payments—even though the County itself promised the Court that payments would not issue until May 2025. Ltr. of Appellees at 1, *State v. Harris County*, No. 15-24-00120-CV (Tex. App.—

2

Austin [15th Dist.] Dec. 4, 2024). Those positions cannot be squared with one another.

During the Uplift Harris litigation, the County insisted on multiple occasions that it "must commit" the federal funds that it uses to fund its unconstitutional program "by December 31, 2024." Real Parties in Interest's Opposition to Relator's Motion for Temporary Relief at 31, *In re State*, No. 24-0325 (Tex. Apr. 29, 2024) (quoting 42 U.S.C. § 803(c)(1)); *accord* Appellees' Opposition to Appellant's Motion for Temporary Relief at 17, *State v. Harris County*, No. 15-24-00061-CV (Tex. App.—Austin [15th Dist.] Apr. 22, 2024) (same); Real Parties in Interest's Motion to Vacate Administrative Stay at 7, *In re State*, No. 24-0325 (Tex. June 6, 2024) (same). Indeed, the County told the Supreme Court that "Harris County must commit the federal funds . . . dedicated to Uplift Harris by the end of the year"—that is, 2024—"or lose them forever." Opposition to Relator's Motion for Temporary Relief at 2, *In re State*, No. 24-03255 (Tex. Apr. 29, 2024). This putatively looming "commitment" deadline formed part of the basis for the courts to act expeditiously and for the parties to brief the cases speedily because, as Harris County put it, "[b]uilding any other program would take significant time and effort." *E.g.*, Motion to Vacate Administrative Stay at 7, *In re State*, No. 24-0325. But New Year's Day 2025 has now come and gone, and the County has filed no suggestion in *any* court regarding which program—Uplift Harris or the Community Prosperity Program—is now moot. But if the County was correct that it "must commit" federal funds to a program "by December 31, 2024," then one of those programs surely is moot by

now. Litigants "are duty-bound for as long as they invoke or submit to a court's authority to confirm the presence of jurisdiction and to raise jurisdictional defects." *Rattray v. City of Brownsville*, 662 S.W.3d 860, 867 (Tex. 2023).

The County's delay in seeking relief from the Court's order precludes that relief. In addition to its inexplicable failure to suggest which iteration of its program is now moot, the County has also told the Supreme Court of Texas that this Court's order is "erroneous[]" and represented to the Supreme Court that the County planned to file a mandamus petition against this Court. Status Update of Real Parties in Interest at 3, *In re State*, No. 24-0325 (Tex. Dec. 11, 2024). But that petition has yet to materialize. Moreover, this Court issued its order preventing the County from making payments during this appeal on December 6, yet the County files its motion to vacate over a month later. "[E]quity aids the diligent and not those who slumber on their rights." *Rivercenter Assocs. v. Rivera*, 858 S.W.2d 366, 367 (Tex. 1993) (quoting *Callahan v. Giles*, 155 S.W.2d 793, 795 (Tex. 1941)).

But more to the point, the County's position now is in tension with its earlier pledge to this Court that it would not make payments "until May 2025 at the earliest." Ltr. of Appellees, *supra*, at 1. The Court accepted both parties' desire for speed in this appeal and ordered expedited briefing. Order, *State v. Harris County*, No. 15-24-00120-CV (Tex. App.—Austin [15th Dist.] Dec. 6, 2024). It has also set submission of this case for February 12. These actions suggest that the Court plans to act expeditiously. Yet the County still insists that the Court should not have prevented it from making payments. But that makes no sense in light of the County's earlier representation that payments would not issue until May of this year. If the

County plans to keep its promise that it will not make payments until that time, an order preventing it from doing so in the interim cannot harm it. *Contra* Motion at 14. After all, the Court's order only prohibits the County from doing what it promised it wouldn't do anyway. Ltr. of Appellees, *supra*, at 1. The County's insistence that the Court should not have ordered it not to issue Program payments during this appeal is redolent of its earlier attempt to make payments earlier than it had previously pledged in court. *Compare* Relator's Reply in Support of Motion for Temporary Relief at 7 n.4, *In re State*, No. 24-0325 (Tex. May 1, 2024) (transcribing some of the County's representations, including representations to the trial court in the Uplift Harris litigation, that Uplift Harris payments would not issue until April 24, 2024), *with* Rodney Ellis (@RodneyEllis), X (Apr. 23, 2024, 1:39 PM), https://x.com/RodneyEllis/status/1782841748512817292 (writing, the day before April 24, 2024, that the County was "racing to get at least one payment out the door" before the Supreme Court's "order came down"). Given that previous conduct, the Court's order here was wise.

## II.  The Court Had Inherent Authority to Issue its Order.

The Court's reliance upon its inherent authority when it issued its December 6 order was proper. Order, December 6, 2024. The Court's "inherent powers are those powers that a court 'may call upon to aid in the exercise of its jurisdiction, in the administration of justice, and in the preservation of its independence and integrity.'" *Eichelberger v. Eichelberger,* 582 S.W.2d 395, 398 (Tex. 1979). The Court has inherent authority to safeguard its own jurisdiction. "The power of the courts of ap-

peals to protect their jurisdiction is essential for the orderly administration of justice." *Dall. Morning News v. Fifth Ct. of Appeals,* 842 S.W.2d 655, 658 (Tex. 1992). Indeed, "[c]ourts of appeal routinely assert their right to safeguard jurisdiction." *Id.*; *see also* Tex. Gov't Code § 22.221(a).

In accordance with the County's argument (at 4) that "the parties . . . are responsible for advancing the facts and arguments entitling them to relief," the State set forth in great detail the need for temporary orders in this case. Appellant's Motion for Temporary Order and Alternative Motion for Expedited Appeal at 4, 28, *State v. Harris County*, No. 15-24-00120-CV (Tex. App.—Austin [15th Dist.] Nov. 12, 2024). And the State explained the need to preserve the status quo and prevent irreparable harm to the parties to the pendency of appeal. *Id., see also In re Abbott,* 645 S.W.3d 276, 283 (Tex. 2022). The County contends (at 5) that the Attorney General has previously argued "against invoking inherent authority because he does not think it would authorize this Court's injunction." But that argument is irrelevant because this Court, not the Attorney General, determines its own jurisdiction. What's more, the Supreme Court expressed skepticism about the State's argument there. *Abbott*, 645 S.W.3d at 282 n.6. Regardless, the mandamus petition in *Abbott*, No. 22-0229 (Tex. Mar. 23, 2022), argued that "temporary relief is not necessary to preserve the courts' jurisdiction," *id*. at 11, but as the State explained in its motion (at 24-27), such relief *is* necessary to preserve the Court's jurisdiction here. "[A]n appellate court is fully armed in a direct appeal to protect its own jurisdiction and the subject matter of the appeal." *In re Sheshtawy,* 154 S.W.3d 114, 120 (Tex. 2004).

"This is a familiar principle." *Id.* Here, the State asked the Court to prohibit Program payments and, thus, the "potential violation of the Texas Constitution [that cannot] be remedied or undone if payments were to commence while the underlying appeal proceeds." *In re State,* 2024 WL 2983176, at *3. Nor could the Attorney General's mandamus petition in *In re Motheral* possibly bind the Attorney General, much less this Court, because the Texas Supreme Court *denied* the Attorney General's petition in that case. *See* Order, *In re Motheral*, No. 22-0106 (Tex. Feb. 18, 2022).

The County contends (at 3) that the Court acted improperly because the parties had not specifically invoked the Court's inherent powers to issue its order. But the Texas Supreme Court routinely rejects such arguments. "Whenever possible," that Court refuses to entertain "form-over-substance requirements that favor procedural machinations over reaching the merits of a case." *E.g.*, *Dudley Constr., Ltd. v. Act Pipe & Supply, Inc.*, 545 S.W.3d 532, 538 (Tex. 2018); *Verburgt v. Dorner*, 959 S.W.2d 615, 617 (Tex. 1997) ("We decline to elevate form over substance."). And courts have the obligation to consider their own jurisdiction sua sponte, including by determining whether they lack or possess jurisdiction. *See Tex. Right to Life v. Van Stean*, 2024 WL 4863170, at *5 (Tex. Nov. 22, 2024) (noting that courts have the duty to ensure their own jurisdiction). "What matters is not the title of a pleading but rather its jurisdictional nature." *Id.*

## III. The Court Properly Used Its Inherent Authority.

"An appellate court asked to decide whether to stay a lower court's ruling pending appeal or to stay a party's actions while an appeal proceeds should seek 'to preserve the parties' rights until disposition of the appeal.'" *In re State,* 2024 WL

2983176, at *2. The County contends (at 6-7) that courts must use their inherent authority with restraint and caution and that "a threat to jurisdiction must be a prerequisite for using inherent authority to preserve jurisdiction." The Court's order easily met both conditions.

### A. The Court's order is limited to payments under the Program.

The Court's order merely prevents any Program payments while the appeal proceeds. Nothing prohibits Harris County from continuing to develop of the Program. *Contra* Motion 14 (arguing that the "shadow" of the Court's order "risks discouraging the County from continuing to pursue" the Program). And as the County has admitted, Program terms and restrictions may "be augmented and drafted differently by the time the program is finalized," and "there's still considerable planning that needs to be done between now and when we test out the work flows." Reply Brief in Support of the State's Motion for Emergency Relief at 4, (Tex. App.—Austin [15th Dist.] Dec. 2, 2024). The County remains free to continue this development while this appeal proceeds.

### B. Any Program payments threaten the Court's jurisdiction.

The County now argues (at 10) that "[t]he Court could grant effective relief up until the issuance of the last [Program] payment," but it has apparently forgotten its earlier agreement that "[o]nce the funds are distributed to individuals, they cannot feasibly be recouped it is later determined they were paid in violation of the Texas Constitution," *In re State,* 2024 WL 2983176, at * 5,  This inability to recoup Program payments threatens the Court's jurisdiction and its ability to grant effective relief.

8

The State's Motion for Temporary Order explained (at 25-27) the need to "preserve the status quo" and "preserve the parties' rights until disposition of the appeal." *See In re State,* 2024 WL 2983176, at *2. After all, Harris County has previously acted contrary to its testimony in court by attempting to accelerate payments to avoid a court order. *Supra* Part I. When considering the County's prior attempts to rush payments "out the door" before the County's previously identified payment date, *supra* at 5, temporarily enjoining payments is the only option to ensure the Court can provide full relief upon conclusion of this appeal and protect the Court's jurisdiction.

And allowing payments to be made pending appeal threatens the Court's jurisdiction. The County contends (at 11) that the Court should permit it to make seventeen of its eighteen planned monthly payments because, in its view, those payments would not harm the Court's jurisdiction. That view is misguided. "[U]ltra vires conduct by local officials automatically results in harm to the sovereign as a matter of law." *In re State*, 2024 WL 2983176, at *4. And the "alleged harm here is irreparable" because "once the funds are distributed to individuals, they cannot feasibly be recouped if it is later determined they were paid in violation of the Texas Constitution." *Id*. Upon each individual monthly payment, the State will experience irreparable harm. *Id*. And after each payment, the Court will lose jurisdiction to prescribe a remedy for that ultra vires conduct. Permitting the County to make payments will harm the Court's jurisdiction to afford relief. After all, courts prescribe remedies, not decide abstract legal questions. *See Bienati v. Cloister Holdings, LLC,* 691 S.W.3d 493, 497 (Tex. 2024). *Contra* Motion 11.

9

The County insists that "[t]he State's claim that" the Program "is unlawful is not mooted by a decrease in the amount available" to disburse. Motion 12 (emphasis omitted). But the State experiences harm every time the County violates the Texas Constitution. *State v. Hollins*, 620 S.W.3d 400, 410 (Tex. 2020) (per curiam). That does not change just because the County may have money left over with which to violate the Constitution again. And *Builder Recovery Service, LLC v. Town of Westlake* (*BRS*), 650 S.W.3d 499 (Tex. 2022), is inapposite, *contra* Motion 11-12. *BRS* is not an ultra vires case. *See generally* 650 S.W.3d 499. And even if it were, towns like Westlake are not sovereign like Texas is, so Westlake could not have experienced the same harm to the sovereign that Texas will if the County makes even a single payment. *Hollins*, 620 S.W.3d at 410.

## IV. Factors for Awarding Injunctive Relief Favor the State.

Harris County argues (at 12) that the Court failed to consider the likely merits and balance of harms in issuing its order, but this amounts to a contention that the Court did not write a *comprehensive opinion* prior to deciding the case. But appellate courts, including the Texas Supreme Court, commonly issue short orders granting appellate motions, including motions for injunctive relief, without issuing comprehensive opinions. *E.g.*, Order, *State v. Harris County,* No. 23-0656 (Tex. Aug. 22, 2023); Order on Petition for Writ of Mandamus, *In Re Greg Abbott,* No. 21-0686 (Tex. Aug. 15, 2021). Indeed, the Texas Rules of Appellate Procedure require a court of appeals to issue a written opinion "necessary to a final disposition of the appeal. Tex. R. App. P. 47.1. The Rules do not require the same for orders pending appeal.

But in any event, the likelihood of success on the merits and the balance of harms favor the State.

The State has already explained why it is likely to succeed on the merits. Appellant's Motion for Temporary Order, *supra*, at 10-19. Specifically, the State showed that the Program is gratuitous and lacks a legitimate public purpose, and that the County failed to retain sufficient control over the funds as required. *Borgelt v. Austin Firefighters Ass'n, IAFF Loc. 975*, 692 S.W.3d 288, 301 (Tex. 2024). The State also explained, State's Reply Supporting Emergency Relief, *supra,* at 29-32, that no other constitutional provision authorizes the Program, and State's Reply at 33, the Program violates the Equal Protection Clause. The State has elaborated on those issues in its recently filed brief.

With respect to balancing the equities, the State's interests prevail once again. The State suffers automatic harm "as a matter of law" when local officials act ultra vires. *Hollins,* 620 S.W.3d at 410. "Indeed, the violation of duly enacted state law by local government officials 'clearly inflicts irreparable harm on the State.'" *In re State,* 2024 WL 2983176, at *4. So too here. The State has shown, State's Reply at 15-33, that Harris County and its elected officials have likely violated the Texas Constitution. And as the State has explained, *supra* at 8, any funds distributed under the Program cannot be "recouped if it is later determined they were paid in violation of the Texas Constitution." *In re State,* 2024 WL 2983176, at *5. Each individual payment will inflict irreparable harm on the State.

By contrast, the County "is not harmed by being required to follow the Texas Constitution." *Id.* And while the County argues (at 14) that "the program does not

11

violate the law," the Supreme Court has already conducted a "preliminary assessment of the merits" of Uplift Harris, essentially identical to the Program, and "[it] does not favor the County." *Id.* Any temporary prohibition against issuing payments under the Program "ensures public funds are not irrevocably spent in violation of the Texas Constitution." *Id.* Either way, the County is not harmed by being prohibited from issuing payments when it has represented that it will not do so anyway.

## PRAYER

The Court should deny the motion.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil Litigation

KIMBERLY GDULA
Chief, General Litigation Division

WILLIAM D. WASSDORF
Deputy Chief, General Litigation
State Bar No. 24103022
Will.Wassdorf@oag.texas.gov

/s/ William H. Farrell
WILLIAM H. FARRELL
Assistant Attorney General
Texas State Bar No. 00796531
Biff.Farrell@oag.texas.gov
Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel: (512) 936-2650
Fax: (512) 320-0667

Counsel for Appellant

## CERTIFICATE OF COMPLIANCE

Microsoft Word reports that this brief contains 3,217 words, excluding exempted text.

/s/ William H. Farrell
WILLIAM H. FARRELL

13

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Nicole Myette on behalf of William Farrell
Bar No. 796531
nicole.myette@oag.texas.gov
Envelope ID: 96439972
Filing Code Description: Response
Filing Description: 20250121_Aplnts Resp Mtn to Vacate_Comm Prsprty
Status as of 1/21/2025 3:25 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Yetter Coleman | | efile@yettercoleman.com | 1/21/2025 3:07:36 PM | SENT |
| Edward Swidriski | 24083929 | Edward.Swidriski@harriscountytx.gov | 1/21/2025 3:07:36 PM | SENT |
| Grant Martinez | | gmartinez@yettercoleman.com | 1/21/2025 3:07:36 PM | SENT |
| Lily Hann | | lhann@yettercoleman.com | 1/21/2025 3:07:36 PM | SENT |
| Marisa Mata | | mmata@yettercoleman.com | 1/21/2025 3:07:36 PM | SENT |

Associated Case Party: Harris County, Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Christopher Garza | 24078543 | christopher.garza@harriscountytx.gov | 1/21/2025 3:07:36 PM | SENT |
| Jonathan Fombonne | 24102702 | jonathan.fombonne@harriscountytx.gov | 1/21/2025 3:07:36 PM | SENT |
| Christian Menefee | 24088049 | christian.menefee@harriscountytx.gov | 1/21/2025 3:07:36 PM | SENT |
| Ryan Cooper | 24123649 | ryan.cooper@harriscountytx.gov | 1/21/2025 3:07:36 PM | SENT |
| Andrea Mintzer | | Andrea.Mintzer@harriscountytx.gov | 1/21/2025 3:07:36 PM | SENT |
| Eleanor Matheson | 24131490 | Eleanor.matheson@harriscountytx.gov | 1/21/2025 3:07:36 PM | SENT |

Associated Case Party: The State of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| William Farrell | | biff.farrell@oag.texas.gov | 1/21/2025 3:07:36 PM | SENT |
| Nicole A.Myette | | nicole.myette@oag.texas.gov | 1/21/2025 3:07:36 PM | SENT |